IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 3:21-cv-00304 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEBY HEALTH CARE SERVICES, INC., | ) | |
| EBERE F. AMAECHI-AKUECHIAMA, | ) | |
| and JUDE AKUECHIAMA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**UNITED STATES OF AMERICA'S MOTION
FOR SUMMARY JUDGMENT AGAINST EBERE F. AMAECHI-
AKUECHIAMA AND JUDE AKUECHIAMA**

Plaintiff United States of America, under Federal Rule of Civil Procedure 56, moves this Court for a summary judgment and permanent injunction The Court has entered a default judgment (ECF 17) against one of the three defendants - JEBY. This motion seeks a judgment against the remaining defendants, Ebere F. Amaechi-Akuechiama  and Jude Akuechiama who operate JEBY.

On October 28, 2021, the United States filed this action against three defendants – corporate entity Jeby Health Care Group, Inc. ("JEBY") and against the husband and wife who operate JEBY: Jude Akuechiama and Ebere F. Amaechi-Akuechiama (collectively "the Akuechiamas.")

The suit sought (1) a judgment against JEBY for delinquent employment, unemployment, and corporate taxes; and (2) an injunction against all three defendants to enjoin them from continuing to flaunt their employment and unemployment tax obligations. The Court has already entered a default monetary judgment and an injunction against JEBY (ECF 17). All that remains is to enter an injunction against the Akuechiamas.

JEBY's noncompliance with its federal employment and unemployment tax obligations has resulted in an amount due that exceeds $377,000 as of February 4, 2022. As established by the undisputed facts below, an injunction against the Akuechiamas is necessary and proper to bring them in compliance with their tax obligations.

## STATEMENT OF UNCONTESTED FACTS (UFs)

*The Akuechiamas Operate JEBY*

1.  Defendant JEBY was registered as a Texas corporation in 2004.[1]

2.  JEBY has operated a business out of 614 West Main St Ste D101, League City, TX 77573.[2]

3.  Defendant Ebere F. Amaechi-Akuechiama has been an officer of JEBY since at least 2004.[3]

---

[1] Exhibit 1, Declaration of Ignacio Perez de la Cruz ("Perez Declaration"), at para 6 and its Exhibit C.

[2] Exhibit 2, Declaration of IRS Revenue Officer Francisco Cabello ("Cabello Declaration"), at para 4.

[3] Perez Declaration at para. 6 and its Exhibit D: the Public Information Report ("PIR") filed 2004 lists Ebere Amaechi-Akuechiama as a JEBY's director; see also *Id*. at para 6 and its Exhibit E: PIR listing her as JEBY's president, and Exhibit F (same).

4. At least during 2016-2021, Defendants Jude Akuechiama and Ebere Amaechi-Akuechiama were married to each other.[4]

5. Defendant Jude Akuechiama serves as JEBY's Alternate Administrator.[5]

6. The Akuechiamas are both authorized to perform the following duties for JEBY:[6]

    a) direct or authorize payments of bills to creditors;

    b) prepare, review, sign or authorize or transmit payroll tax returns;

    c) Authorize payroll;

    d) Authorize or make federal tax deposits;

    e) Authorize the assignment of any EFTPS or electronic banking PINS/passwords;

    f) Exercise signature authority over JEBY's business bank accounts at Chase and at Wells Fargo and conduct banking electronically for JEBY; and

    g) Sign JEBY's Forms 941.

### *JEBY is Noncompliant with its Tax Obligations*

7. As an employer, JEBY has obligations to (1) withhold federal income, and the employee portion of Federal Insurance Contributions Act (FICA) and Medicare taxes from its employees' wages, (2) to pay over to the Internal Revenue Service

---

[4] Cabello Declaration at para. 5.

[5] *Id*. at para. 14(a).

[6] *Id*. at para. 14, 15, 17, 18 and its Exhibit C.

both the amounts withheld from its employees' wages and the employer's own

FICA and Medicare taxes, and (3) to timely file a Form 941 Employer's

QUARTERLY Federal Tax Return reporting its employment tax obligations, and

to pay any employment tax owed.[7]

8. As an employer, JEBY also has an obligation to timely file a Form 940

Employer's Annual Federal Unemployment (FUTA) Tax Return reporting its

unemployment tax obligations and to pay any unemployment tax owed.[8]

9. Since at least 2016, JEBY has not been in full compliance with its employment

and unemployment tax obligations.[9]

10. JEBY filed Form 941 Employer's QUARTERLY Federal Tax Returns for the

following quarters and reported the following amounts of employment tax due

(Collectively "the Employment Tax Delinquencies"), but did not fully pay any of

the amounts reported as due:[10]

| Year | Quarter | Amount reported on tax return as owed |
|------|---------|----------------------------------------|
| 2016 | First | $35,802 |
| 2016 | Third | $48,508.97 |
| 2016 | Fourth | $46,458.71 |
| 2016 | First | $42,188.56 |
| 2017 | Second | $42,744.92 |
| 2017 | Third | $28,412.23 |

---

[7] *Id*. at para. 6

[8] *Id*. at para 7.

[9] *Id*. at para 8 and Exhibit 1, Perez Declaration, para. 3, 4, and 5, and Forms 4340 at its Exhibits A and B.

[10] ECF 16-1 Declaration of Bret Crow, para. 12; Exhibit 1, Perez Declaration, Forms 4340 at its Exhibit A.

| 2017 | Fourth | $20,998.16 |
|------|--------|------------|
| 2018 | First | $16,734.16 |
| 2018 | Second | $8,852.44 |
| 2018 | Third | $5,823.92 |
| 2018 | Fourth | $3,821.82 |
| 2019 | First | $3,913.58 |
| 2019 | Second | $4,079.54 |
| 2019 | Third | $2,594.32 |
| 2020 | First | $1,927.72 |
| 2020 | Second | $2,409.98 |
| Total | | |

11. For employment tax periods listed in the preceding paragraph, (1) the biweekly deposits JEBY made during each quarter were insufficient to pay the tax due for the quarter; and (2) JEBY filed Form 941 returns for each quarter without remitting a payment sufficient to pay for the tax due.[11]

12. JEBY owes at least $365,925.73 to the IRS for Employment Tax Delinquencies with interest as calculated to February 4, 2022.[12]

13. JEBY filed Form 940 Employer's Annual Unemployment Tax Returns for the following years and reported the following amounts of unemployment tax due, but has not fully paid the amounts reported as due:[13]

| Year | Amount reported on tax return | Amount owed through 2/3/22 |
|------|-------------------------------|----------------------------|
| 2016 | $3,883.25 | $6,503.62 |
| 2017 | $3,308.06 | $5,349.30 |
| 2018 | $980.55 | $73.92 |

---

[11] Perez Declaration, para. 3 and 4 and its Exhibit A.

[12] ECF 16-1: Declaration of Bret Crow, para. 12.

[13] *Id*.

| Total | $8,171.86 | $11,926.84 |
|-------|-----------|------------|

14. Since at least 2016, Defendants Jude Akuechiama and Ebere Amaechi-Akuechiama have been aware that JEBY had unpaid payroll taxes.[14]

15. While JEBY's delinquent payroll taxes were increasing, Defendants Jude Akuechiama and Ebere Amaechi-Akuechiama paid a mortgage, payroll, and utilities for JEBY.[15]

### The IRS Has not Been Able to Bring JEBY into Tax Compliance

16. Since at least 2016, the IRS has been trying to bring JEBY into compliance with its employment and unemployment tax obligations by, among others, doing the following: sending collection letters to JEBY, communicating with the Akuechiamas and with JEBY's Power of Attorneys (POAs) multiple times about the need to be compliant, issuing multiple levies to collect JEBY's delinquent employment taxes, recording federal tax liens in the county records against JEBY for its employment tax delinquencies, and warning JEBY's that its noncompliance could lead to a suit referral to the Department of Justice. The IRS' efforts have not been successful in bringing JEBY into full compliance with its employment and unemployment tax obligations.[16]

---

[14] Cabello Declaration, para. 14 (f), 15, 17(f), and 18, and its Exhibits B and D.

[15] *Id*. at para. 14 (g), 15, 17(g) and 18, and its exhibits B and D.

[16] *Id*. at para. 9.

6

17. Defendants Jude Akuechiama and Ebere Amaechi-Akuechiama both handled IRS contacts such as phone calls, correspondence, or visits by IRS personnel.[17]

18. In January 2017, in attempts to collect JEBY's delinquent employment taxes, the IRS issued levies on the Texas Department of Aging and Disability, Regions Bank, Palmetto GBA LLC., Texas Department of Human Services, Molina Healthcare of Texas Inc., JP Morgan Chase Bank NA, and Cigna Healthcare Benefits Inc.[18]

19. On October 4, 2019, the IRS mailed an IRS Form 3174 to JEBY advising of nonpayment of over $330,000 in employment and unemployment taxes. [19]

20. On October 4, 2019, an IRS Revenue Officer Cabello ("RO Cabello") visited JEBY's office at 614 West Main St Ste D101, League City, TX 77573. At the reception desk, Defendant Jude Akuechiama greeted RO Cabello. RO Cabello advised Defendant Jude Akuechiama of compliance requirements for employment taxes and consequences for noncompliance. [20]

---

[17] *Id*. at para. 14(h), 15, 17(h), and 18, and at its Exhibits B and C.

[18] *Id*. at para. 10.

[19] *Id*. at para. 11.

[20] *Id*. at para. 12.

21. On October 4, 2019, RO Cabello informed JEBY's POA of the IRS' intention to pursue a referral for suit for injunctive relief if within 30 days JEBY did not become compliant with its employment taxes.[21]

22. On November 1, 2019, RO Cabello gave Defendant Jude Akuechiama an IRS Letter 3164-A advising that JEBY was delinquent in paying employment taxes for multiple quarters spanning 2016-2019. [22]

23. As early as January 9, 2017, the IRS filed Notices of Federal Tax Liens (NFTLs) in Galveston County against JEBY for its employment tax delinquencies. [23]

24. On December 17, 2019, the IRS mailed JEBY an IRS Letter 1058. [24]

**The Akuechiamas invocation of the Fifth Amendment in response to Discovery**

25. The United States served Defendant Ebere F. Amaechi-Akuechiama with a request for admission and interrogatories.[25] In response to these discovery requests, Defendant Ebere F. Amaechi-Akuechiama invoked her Fifth Amendment right against self-incrimination and provided no other responses to the interrogatories or requests for admission.[26]

---

[21] *Id.*

[22] *Id*. at para. 13.

[23] *Id*. at para. 19 and its Exhibit F.

[24] *Id*. at para. 20 and its Exhibit G.

[25] Perez Declaration at para. 7 and its Exhibits G, H, and J.

[26] *Id*. at para. 8 and 9 and its Exhibits K and L.

26. The United States served Defendant Jude Akuechiama with a request for admission and interrogatories.[27] In response to these discovery requests, Defendant Jude Akuechiama invoked his Fifth Amendment right against self-incrimination and provided no other response to the interrogatories or requests for admission.[28]

27. The interrogatories sent to the Akuechiamas requested them, among other things, to "list all defenses you have to the claims in this lawsuit," and that "[i]f you contend that the United States is not entitled to the injunction against you as sought in the complaint, state all the reasons why you contend that."[29]

### SUMMARY OF THE ARGUMENT

As a business with employees, JEBY has an obligation to comply with its employment and unemployment tax obligations, including making sufficient periodic (often biweekly) tax payments during each quarter, and paying employment tax by the due date. JEBY has a long history of not complying with these obligations. The Akuechiamas operate JEBY and are responsible for its noncompliance. An injunction against the Akuechiamas is necessary and proper to compel their compliance with the tax laws.

---

[27] *Id*. at para. 7, 10 and its Exhibits G, J, M, and N.

[28] Id. at para. 8, 9 and its Exhibits K and L for requests of admissions; and para 11 and its Exhibit O for the Interrogatories

[29] *Id*. at its Exhibits J and N.

## MEMORANDUM OF LAW

## I. THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT

The United States submits that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law granting the injunction it seeks against the Akuechiamas. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986). When considering a motion for summary judgment, the court must review the facts drawing all inferences most favorable to the party opposing the motion. However, that party cannot rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of genuine fact issues for trial. *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 256-257 (1986).

Resolution of this issue by summary judgment will avoid unnecessary expense and use of judicial resources. *Celotex*, 477 U.S. at 327 ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.").

## II. THE UNITED STATES IS ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM FOR AN INJUNCION AGAISNT JEBY'S MANAGERS

### A. **JEBY Has Employment and Unemployment Tax Obligations**

As an employer, JEBY is required by law to withhold from its employees' wages federal income and Federal Insurance Contributions Act ("FICA") taxes, and to pay over to the IRS those withholdings along with JEBY's own FICA and Federal Unemployment Tax Act ("FUTA") taxes (collectively "employment taxes"). *See* 26 U.S.C. §§ 3102,

3111, 3301, 3402, 3403, *see generally Baral v. United States*, 528 U.S. 431, 436 (2000) (explaining that payroll withholding is not a separate tax but is a method of tax collection).

As an employer, JEBY is also required by law to make periodic deposits of the FICA taxes withheld from its employees' pay, as well as JEBY's share of employment taxes, in an appropriate federal depository bank in accordance with the federal deposit regulations. *See* 26 U.S.C. §§ 6302, 6157; *see also* 26 C.F.R. § 31.6302-1, 31.6302(c)-1, 31.6302(c)-3,

As an employer, JEBY is required by law to file with the IRS quarterly Form 941 Employer's QUARTERLY Federal Tax Return. *See* 26 U.S.C. §§ 6011, 6071; 26 C.F.R. §§ 31.6011(a)-1, 31.6011(a)-4; § 31.6071(a)-1.

Aside from the unemployment tax obligations listed above, JEBY has unemployment tax obligations: JEBY must report its unemployment taxes and file a Form 940 (Employer's Annual Federal Unemployment Tax Return) to the IRS on an annual basis, *see* 26 U.S.C. § 6011; 26 C.F.R. §§ 31.6071(a)-1, 31.6011(a)-3.

### B.  JEBY has a History of Noncompliance with its tax Employment and Unemployment Tax Obligations.

JEBY has a long history of noncompliance with its employment and unemployment tax obligations. UF#9. For sixteen of the twenty quarters spanning 2016-2020, JEBY has employment tax delinquencies. UF#10 and 11. IRS transcripts indicate that for these 16 quarters, JEBY both failed to make sufficient biweekly employment tax

payments to the IRS and once it filed the Form 941returns, it failed to concurrently remit full payment for the amounts due. UF #11.

Similarly, JEBY's compliance with its unemployment tax obligations is poor. For three consecutive years, 2016-2018, JEBY accrued unemployment tax delinquencies. UF#12.

### C. The Akuechiamas Operate JEBY

Corporate entities act though their directors, officers, and employees. *See e.g., Paul F. Newton & Co. v. Tex. Commerce Bank*, 630 F.2d 1111, 1112 (5th Cir. 1980). The Akuechiamas have the ability bring JEBY into compliance with its employment and unemployment tax obligations, (or to shut down JEBY if its only viable business model is to misappropriate and spend its employees' payroll tax to keep the business afloat.) Defendant Ebere Akuechiama is JEBY's registered director. UF#3. Her husband, Defendant Jude Akuechiama, is the alternative administrator. UF#4 and 5. They both have the power to authorize payroll, to make payroll tax payments to the IRS, and to prepare, review, sign, authorize and transmit payroll tax returns. UF#6. They also both have authority over JEBY's finances, both having signature authority over JEBY's bank accounts. UF#6. While being aware of JEBY's delinquent payroll taxes were increasing, the Akuechiamas paid a mortgage, payroll, and utilities for JEBY. UF#13 and 14.

### D. A Permanent Injunction Against the Akuechiamas is Necessary and Appropriate for the Enforcement of the Internal Revenue Laws

12

Like all employers JEBY, and its officers, the Akuechiamas, are critical to tax collection. The law requires, and the IRS relies on, employers to accurately report wages, withhold federal taxes from wages, and pay over such taxes to the IRS along with the employer's employment taxes. JEBY has continually and repeatedly failed in these obligations. The Akuechiamas, have been aware of JEBY's continued and repeated failures and have failed to act to ensure JEBY meets its obligations.

As described above, JEBY has been violating its employment tax obligations on a continuing basis and has failed to meet its employment tax obligations despite being aware of its obligations—as shown by the awareness of the Akuechiamas. The IRS efforts to bring the Akuechiamas' business into compliance have failed. UF#15. There is no reason to expect, absent an injunction, that the Akuechiamas will suddenly change their pattern of behavior.

1. **26 U.S.C. § 7402(a) authorizes the injunction sought by the United States**

Section 7402(a) of the Internal Revenue Code (26 U.S.C.) specifically authorizes district courts to issue injunctions "as may be *necessary and appropriate* for the enforcement of the internal revenue law." (emphasis added). That statute manifests "a Congressional intention to provide the district courts with a full arsenal of powers to compel compliance with the internal revenue laws." *Brody v. United States*, 243 F.2d 378, 384 (1st Cir. 1957); *see also United States v. First Nat'l City Bank*, 568 F.2d 853 (2d Cir. 1977). Section 7402(a) can be read even more broadly and be used "to enjoin interference with tax enforcement even when such interference does not violate any

particular tax statute." *United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir.

1984); *see also United States v. Kaplowitz*, 201 F. App'x 659, 661 (11th Cir. 2006).

### 2. An Injunction Under 26 U.S.C. § 7402(a) Against the Akuechiamas Is Necessary and Appropriate

The United States may obtain an injunction by simply meeting Section 7402(a)'s

standard of being "necessary and appropriate" to enforce the internal revenue laws.

"[T]he United States need only meet those criteria, without reference to the traditional

equitable factors, for a court to issue a permanent injunction under [7402]." *United States*

*v. Stoll*, 2005 WL 1763617, C05-0262RSM, at *8 & n.6 (W.D. Wash. 2005); *see also*

*United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir.2000) (finding, with

regard to I.R.C. § 7408, that the "traditional requirements for equitable relief need not be

satisfied since [the statute] expressly authorizes the issuance of an injunction."); *Duke v.*

*Uniroyal, Inc.*, 777 F.Supp. 428, 433 (E.D.N.C.1991) (finding that where an injunction is

expressly authorized by statute, and the statutory conditions have been satisfied, the

moving party is not required to establish irreparable injury before obtaining injunctive

relief); *In re Dow Corning Corp.*, 280 F.3d 648, 657 (6th Cir. 2002) ("[B]ecause the

district court had a statutory basis for issuing such an injunction, it was not confined to

traditional equity jurisprudence."); *United States v. Colorado Mufflers Unlimited*, 2007

WL 987459, 03-cv-1310, at *4 (D. Colo. March 30, 2007) ("upon statutory grant of

authority to issue injunctions, the traditional equitable factors . . . need not be proved.");

*United States v. Sifuentes*, 2005 WL 3627339, SA-05-CA-197, at *5 (W.D. Tex. Nov. 28,

2005) ("the Court need not consider the traditional equity factors when issuing a statutory injunction").

The United States meets the necessary and appropriate standard here. The Akuechiamas, as administrators or officers of JEBY, have substantially interfered with, and continue to substantially interfere with, the internal revenue laws by continually failing to pay employment tax obligations required by 26 U.S.C. §§ 3102, 3111, 3301, and 3402, and failing to make adequate employment tax deposits as required by 26 U.S.C. §§ 6302, 6157 and 26 C.F.R. §§ 31.6302–1, 31.6302(c)-1, and 31.6302(c)-3. JEBY has not come into compliance with the internal revenue laws despite the IRS' continued multi-year administrative efforts. UF#16. After the administrative efforts by the IRS have failed to induce compliance, an injunction is necessary and appropriate to prevent these continued violations.

JEBY's wrongful conduct—which is reflective of the actions and failures to act of the Akuechiamas — has resulted, and continues to result, in significant and increasing financial loss to the United States. Allowing the Akuechiamas to continue failing to pay the employment taxes that JEBY accrues will only further compound the United States' loss. An injunction is therefore "necessary and appropriate" for the enforcement of the internal revenue laws under 26 U.S.C. § 7402(a). *See, e.g.*, *United States v. Wilson*, 2009 WL 1465878, Case No. 5:08-cv-00474, at *2 (E.D. Ky. April 6, 2009) ("Because defendants continue to pyramid their tax liabilities and their continued violation of the internal revenue laws is likely, an injunction is 'necessary or appropriate for the enforcement of the internal revenue laws' and therefore appropriate under U.S.C. §

15

7402(a)."); Absent court intervention, the United States lacks an adequate legal remedy to prevent additional nonpayment of employment taxes owed by JEBY on account of its business operations.

### 3.  An Injunction Under the Court's Equitable Powers is Also Appropriate

Although not necessary, the United States also meets the traditional equitable factors to obtain an injunction. The Supreme Court reaffirmed those as four factors that a Plaintiff needs to show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 141, 130 S. Ct. 2743, 2748 (2010).

The United States satisfies all four factors. First, the United States has suffered and will continue to suffer irreparable harm because of the Akuechiamas' continuing violations of the internal revenue laws, including but not limited to the loss of tax revenue, the drain on limited IRS resources due to the extensive oversight of this business, and the harm to the system as a whole, when competitors see the business' continued noncompliance with the very federal laws competitors are following. The lost revenue includes both the loss of the employee's portion of the income taxes, for which the employees have already received credit, as well as the loss of the employer's own obligation. When an employer fails to pay its employment taxes, the United States loses not only the employer's FICA and FUTA tax contributions, but also the employees' FICA and federal income tax payments. The IRS must credit the funds an employer

withholds against employees' individual income tax liabilities, regardless of whether the employer actually pays such funds over to the United States. 26 U.S.C. § 31(a); Treas. Reg. § 1.31-1(a). Despite collection efforts, JEBY's aggregate delinquent tax liability, including penalties and interest, is over $365,000 as calculated to February 4, 2022. UF#10.

Second, the United States lack an adequate legal remedy to address the injuries the Defendants have caused. The IRS may never recover the tax liabilities at issue. Furthermore, absent an injunction, the IRS will be required to continue spending considerable resources, which themselves can never be recovered, in a never-ending cycle of determining tax liability and then attempting to collect past-due taxes, with an ever-increasing amount of delinquent taxes. For years, the IRS has diligently attempted to collect JEBY's ever-growing liabilities. UF#15-23. Since at least 2016, the Akuechiamas have been aware of JEBY's failure to meet its employment tax obligations UF#13; however, they have not acted to make sure that JEBY fulfills its requirements. UF#14. Without an injunction, the government cannot compel JEBY to meet its obligations—or directly compel its officers to ensure JEBY does so.

Third, the balance of hardships undoubtedly weighs in favor of the injunctive relief requested. The injunction would not impose any new requirements on the Defendants. It would simply require them to do what the internal revenue laws already obligate them to do—pay employment taxes—and provide the tools to ensure such obligations are met. Moreover, if the Defendants comply with the injunction, JEBY will not accrue penalties or interest on its future tax liabilities that are paid in full and on time,

nor will the Akuechiamas risk Trust Fund Recovery penalties assessable under 26 U.S.C. § 6672, providing further benefit, and reduction of hardship, to the Akuechiamas.

Finally, not only will the public interest not be disserved by this injunction, but the injunction requested will in fact served the public interest by strengthening the system of taxation and ensuring that it is fairly applied. As discussed above, employers are vital to the federal taxation system because the government relies on them to collect income and employment taxes at the source. Once the Court enters the injunction, the United States seeks will help strengthen that system by seeking to ensure the Akuechiamas comply with it. Moreover, without the injunction, JEBY may continue to have an unfair advantage over its law-abiding competitors who pay their taxes. And, because this unfair advantage accrues to the benefit of the Akuechiamas, it is appropriate to enjoin them personally, in addition to the injunction that has already been entered by default against JEBY. Because JEBY is not paying its employment tax liabilities, it presents an example to the competitors in the community. This injunction will show that such behavior is not acceptable and will encourage voluntary tax compliance among the general public.

## CONCLUSION

Because no genuine dispute exists as to the material facts of the Akuechiamas' involvement, knowledge, and responsibility for the failures of JEBY, the United States is entitled to summary judgment against the Akuechiamas. JEBY—under the control of the Akuechiamas —has been violating the Internal Revenue Code's employment tax requirements for years. Absent an injunction, the Akuechiamas, via JEBY, will continue to fail to meet their federal tax obligations leaving the United States with no practical

recourse. The United States therefore requests the Court to enter a permanent injunction against the Akuechiamas under 26 U.S.C. § 7402(a) to prevent the irreparable harm to the government caused by JEBY's continued noncompliance with federal tax laws

WHEREFORE the Plaintiff, the United States of America, respectfully requests:[30]

A.     That this Court find that the Akuechiamas have engaged in and are engaging in conduct interfering with the enforcement of the internal revenue laws;

B.     That this Court find that injunctive relief under 26 U.S.C. § 7402(a) and the Court's inherent equity powers is appropriate to stop the Akuechiamas' conduct; and

C.     That this Court enter a permanent injunction, pursuant to 26 U.S.C. § 7402(a), Fed. R. Civ. P. 65, and the Court's inherent equity powers, as follows:

1.  Ms. Amaechi-Akuechiama and Mr. Akuechiama shall cause JEBY, and any other employer entity that they control, to withhold from each employee's paycheck an appropriate amount of income tax and the employee portion of FICA and Medicare taxes;

2.  Ms. Amaechi-Akuechiama and Mr. Akuechiama shall cause JEBY, and any other employer entity that they control, to timely deposit withheld employee taxes, and employer FICA and Medicare taxes in an appropriate federal depository bank in accordance with federal deposit regulations;

3.  Ms. Amaechi-Akuechiama and Mr. Akuechiama shall cause JEBY, and any other employer entity that they control, to timely deposit FUTA taxes in an

---

[30] The United States is submitting a proposed order containing these terms.

appropriate federal depository bank each quarter in accordance with federal deposit regulations;

4. Ms. Amaechi-Akuechiama and Mr. Akuechiama shall sign and deliver to a designated IRS Revenue Officer, currently Linda Sneed (contact information to be provided by Government counsel), such specific location as the IRS may deem appropriate, on the first day of each month, an affidavit stating that the required federal income taxes, FICA, and Medicare taxes, and FUTA taxes were fully and timely deposited for each pay period during the prior month;

5. Ms. Amaechi-Akuechiama and Mr. Akuechiama shall cause JEBY, and any other employer entity that they control, to timely file Form 941 Employment Tax Returns and Form 940 Unemployment Tax Returns that come due after the date of the injunction, and Ms. Amaechi-Akuechiama and Mr. Akuechiama shall provide a copy of each filed return to a designated IRS Revenue Officer, currently Linda Sneed (contact information to be provided by Government counsel), in such manner as the IRS deems appropriate, within five days of filing;

6. Ms. Amaechi-Akuechiama and Mr. Akuechiama shall cause JEBY, and any other employer entity that they control, to timely pay all the required outstanding liabilities due on each return required to be filed under the Court's Injunction Order;

7. Ms. Amaechi-Akuechiama and Mr. Akuechiama are enjoined from paying other creditors of JEBY or from transferring, disbursing, or assigning any money, property, or assets of JEBY after the date of the Injunction Order until after such time as the required deposits described in paragraphs C-1 and C-2, and any liabilities described in paragraph C-6, have been paid in full, for any tax period ending after the injunction is issued;

8. Ms. Amaechi-Akuechiama and Mr. Akuechiama are enjoined from assigning and/or transferring money or property to any other entity to have that entity pay the salaries or wages of JEBY's employees, except for a commercial payroll services provider approved in advance by counsel for the United States;

9. Ms. Amaechi-Akuechiama and Mr. Akuechiama shall permit a representative from the Internal Revenue Service to inspect JEBY's books and records periodically, with two business days' notice of each inspection; and

10. For the five-year period beginning on the date this Injunction Order is entered, Ms. Amaechi-Akuechiama and Mr. Akuechiama shall notify, in writing, such revenue officer as the IRS designates, currently Linda Sneed (contact information to be provided by Government counsel), if Ms. Amaechi-Akuechiama and Mr. Akuechiama come to form, incorporate, own, or work in a managerial capacity for another business entity, within five business days of such event. Regardless of such notification, the

21

preceding subparagraphs of this paragraph C shall apply to any employer entity controlled by Ms. Amaechi-Akuechiama and Mr. Akuechiama.

11. Ms. Amaechi-Akuechiama and Mr. Akuechiama must deliver to all their current employees a copy of the Court's Findings and Injunction, within 30 days of the date of the Injunction Order;

D.    That this Court retain jurisdiction over this case to ensure compliance with the injunction and that the United States be permitted to conduct post-judgment discovery to ensure compliance with the injunction, as well as discovery pertaining to collection of the judgment amount; and

E.    That this Court order that, if Ms. Amaechi-Akuechiama or Mr. Akuechiama violate any term of this injunction, then counsel for the United States may send them written notice of the violation, and Ms. Amaechi-Akuechiama and Mr. Akuechiama shall have 10 days after notification is sent to cure the violation;

1. A "cure" for the violation includes making a late tax deposit and all accruals on such tax; paying delinquent tax shown on a return and all accruals on such tax; filing a delinquent tax return; and providing a delinquent notification to the designated IRS Revenue Officer.

2. If counsel for the United States has sent Ms. Amaechi-Akuechiama and Mr. Akuechiama three separate written notifications for three separate violations, then counsel for the United States shall no longer be obligated to send written notification of a violation.

3. If any violation is not cured within ten days of notification or if, after the third notification followed by cures, the United States becomes aware of a new violation by Ms. Amaechi-Akuechiama or Mr. Akuechiama, then the United States shall be entitled to file with this Court a Motion for an Order to Show Cause why Ms. Amaechi-Akuechiama and Mr. Akuechiama should not be held in contempt of this injunction, why JEBY should not be ordered to cease doing business immediately, and why Ms. Amaechi-Akuechiama and Mr. Akuechiama should not be permanently enjoined from forming, incorporating, or owning another or a successor business entity and from working for any business in any capacity that includes any responsibility for withholding, accounting for, or paying over employment taxes or for filing employment tax returns.

Date: May 2, 2022

DAVID A. HUBBERT
Deputy Assistant Attorney General

/s/ *Ignacio Perez de la Cruz*
IGNACIO PEREZ DE LA CRUZ
Massachusetts Bar No. 67261
SDTX Federal ID No. 2433910
Attorney-in-charge
Tax Division
U.S. Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 880-9759
 (214) 880-9741 (FAX)
Ignacio.PerezdelaCruz@usdoj.gov
**Attorney for the United States**

## CERTIFICATE OF SERVICE

I certify that on May 2, 2022, I electronically filed the foregoing document via the Court's ECF system, which will send notification to all parties of record. An email copy, an agreed upon mode of service, was sent as follows:

Finally, a paper copy was mailed to the following:

Jeby Health Care Services, Inc.
614 West Main Street
Suite D101
League City, Texas 77573

IGNACIO PEREZ DE LA CRUZ